UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERIC J. KIKKERT,<br><br>                Plaintiff,<br><br>    v.<br><br>STATE OF WASHINGTON and UNITED STATES FEDERAL GOVERNMENT,<br><br>                Defendants. | CASE NO. C25-950 JNW<br><br>ORDER GRANTING THE UNITED STATES' MOTION TO DISMISS |

This matter comes before the Court on Defendant United States' Motion to Dismiss. (Dkt. No. 6.) Having reviewed the Motion, Plaintiff's Response (Dkt. No. 9), the Reply (Dkt. No. 12), the Surreply (Dkt. No. 13), and all supporting materials, the Court GRANTS the Motion and DISMISSES the claims against the United States WITHOUT PREJUDICE.

**BACKGROUND**

Appearing pro se, Plaintiff James Kikkert has filed suit against Defendants State of Washington and the United States to enjoin them from using his state and federal taxes to "fund political parties that enact laws, rules, and policies violating the U.S. Constitution and

Washington State Constitution." (Compl. ¶ 1. (Dkt. No. 1-1).) Kikkert, a military veteran, alleges that Washington and the United States have violated the First, Fifth, and Fourteenth Amendments of the United States Constitution, and that this has caused him emotional and psychological distress. (Id. ¶¶ 1-3.) The United States seeks dismissal of the Complaint both because Kikkert lacks standing and because he has not identified a private right of action against it. The State of Washington has not moved for relief.

## ANALYSIS

### A. Legal Standard

The United States move to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss for lack of subject matter jurisdiction. Upon such a motion, the plaintiff party bears the burden of establishing the court's jurisdiction. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). In contrast, a motion to dismiss for failure to state a claim tests the legal sufficiency of the claims under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). In ruling on a Rule 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### B. Kikkert Lacks Standing

The United States argues that Kikkert lacks Article III standing necessary to confer subject matter jurisdiction over this matter. Kikkert's complaint includes two alleged forms of standing: (1) taxpayer standing; and (2) "personal harm" standing. (Compl. ¶¶ 15-16.) The Court agrees with the United States and finds that Kikkert lacks standing to proceed with this litigation.

"Under Article III of the Constitution, our jurisdiction is limited to 'Cases' and 'Controversies.'" Perry v. Newsom, 18 F.4th 622, 630 (9th Cir. 2021) (quoting U.S. Const. Art. III, § 2). To satisfy Article III, a plaintiff must have standing to bring the suit. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). For the plaintiff to have standing, they must demonstrate that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . , and (3) that is likely to be redressed by a favorable judicial decision." Spokeo v. Robins, 578 U.S. 330, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). An injury in fact exists where it is "concrete, particularized, and actual or imminent." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013). For an injury-in-fact to be "concrete," the injury "must actually exist." Perry, 18 F.4th at 631. And for an injury-in-fact to be "particularized," the injury must affect the claimant "in a personal and individual way." Id. The requirements for an injury to be "imminent" are less precisely defined. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending." Clapper, 568 U.S. at 409 (emphasis in original). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561.

1    First, Kikkert has not demonstrated taxpayer standing sufficient to satisfy Article III. The
2    Court reviews the law applicable to taxpayer standing and then explains the deficiencies in
3    Kikkert's allegations.
4    Article III's personal injury requirement generally mandates that a taxpayer seeking to
5    challenge laws of general application where their own injury is not distinct from that suffered in
6    general by other taxpayers are not adequate to satisfy standing. Hein v. Freedom from Religion
7    Found., Inc., 551 U.S. 587, 598 (2007). "[T]he interest of a federal taxpayer in seeing that
8    Treasury funds are spent in accordance with the Constitution does not give rise to the kind of
9    redressable 'personal injury' required for Article III standing." Id. at 599. While a taxpayer can
10   "challenge the collection of a specific tax assessment as unconstitutional," they generally cannot
11   challenge how lawfully collected taxes are used by the government. Id. (emphasis in original).
12   But there exists "a narrow exception to the general constitutional prohibition against taxpayer
13   standing." Id. at 602 (citing Flast v. Cohen, 392 U.S. 83 (1968)). In Flast, the Court established
14   "a two-part test for determining whether a federal taxpayer has standing to challenge an allegedly
15   unconstitutional expenditure." Id. at 602. First, the plaintiff must show a "logical link between
16   [his taxpayer] status and the type of legislative enactment attacked." Flast, 392 U.S. at 102. This
17   requires more than "an incidental expenditure of tax funds in the administration of an essentially
18   regulatory statute." Id. Second, "the taxpayer must establish a nexus between that status and the
19   precise nature of the constitutional infringement alleged." Id. This requires the taxpayer to "show
20   that the challenged enactment exceeds specific constitutional limitations imposed upon the
21   exercise of the congressional taxing and spending power and not simply that the enactment is
22   generally beyond the powers delegated to Congress by Art. I, s 8." Id. at 102-03. In other words,
23
24

1   the taxpayer must show that "his tax money is being extracted and spent in violation of specific
2   constitutional protections." Id. at 106.

3   Kikkert fails to satisfy his burden to demonstrate taxpayer standing. Kikkert has not
4   shown a logical link between the collection of taxes and the challenged law. Kikkert claims there
5   exists a "logical link" between the taxes he paid and the "tax dollars funding political parties via
6   specific Congressional acts, like Public Law 109-148 (PREP Act funding)." (Resp. at 6.) This
7   does not suffice to show a logical link, per Flast. While the Public Readiness and Emergency
8   Preparedness ("PREP") Act was enacted as part of an appropriations bill, the Act itself is not an
9   appropriation bill and does not direct funding to political parties. See, generally, Pub. L. 109-
10  148. In other words, Kikkert is merely challenging "the incidental expenditure of tax funds in the
11  administration of an essentially regulatory statute," which falls outside the Flast exception. See
12  Flast, 392 U.S. at 102. Kikkert argues that his claims align with Bowen v. Kendrick, 487 U.S.
13  589, 620 (1988), where the Supreme Court found the taxpayers' had Flast standing to raise
14  Establishment Clause claims against a federal grant program that provided funding for services
15  relating to adolescent sexuality and pregnancy. But in Bowen, as in Flast, the law at issue was "a
16  specific congressional appropriation . . . [that] was undertaken pursuant to an express
17  congressional mandate." Hein, 551 U.S. at 604. Here, Kikkert has failed to show any
18  congressional appropriation. And Kikkert has failed to show any nexus between this taxpayer
19  status and the conclusory claims about constitutional infringements. This is fatal to Kikkert's
20  claimed taxpayer standing and warrants dismissal.

21  The Court also rejects Kikkert's belief that his alleged "veteran-specific distress"
22  constitutes an injury sufficient to satisfy standing. (Resp. at 4; Compl. ¶ 16.) Kikkert argues that
23  as a veteran sworn to uphold the Constitution, he has suffered "'particular emotional' and
24

'psychological distress' from funding violations that breach his oath and harm citizens[.]" (Resp. at 5 (quoting Compl.).) But Kikkert has failed to identify what the "funding violations" are or how they have caused him an individualized and particularized injury. Construed in Kikkert's favor, the only alleged funding violations identified are the use of his taxes to fund political parties, such as the PREP Act. As explained above, Kikkert may only have taxpayer standing to challenge the use of his taxes, and his status as a veteran does not alter the Court's analysis under Flast that shows he lacks standing. The Court thus finds these vague allegations of standing inadequate.

The Court finds that Kikkert lacks standing and that his claims must be dismissed. And because Kikkert has not alleged an injury-in-fact, it does not reach the issues of traceability and redressability.

C.    **Kikkert Fails to State a Claim**

Even if Kikkert had standing, which he does not, the Court finds that he has failed to identify a valid cause of action against the United States and that dismissal under Rule 12(b)(6) is also proper.

First, Kikkert argues that he has stated a claim under 28 U.S.C. § 2201 and "equitable jurisdiction". (Resp. at 8, 11.) The Court finds no merit in either theory. First, the Declaratory Judgment Act, 28 U.S.C. § 2201, which Kikkert cites, expressly excludes from its reach any claims "with respect to Federal taxes" subject to several inapposite exceptions. As the Ninth Circuit has explained, "[t]his exception stems from the 'congressional antipathy for premature interference with the assessment or collection of any federal tax.'" Gilbert v. United States, 998 F.3d 410, 413 (9th Cir. 2021) (quoting Bob Jones Univ. v. Simon, 416 U.S. 725, 732 n.7 (1974)). As such, the Act does not provide Kikkert with a cause of action to challenge the use of his

1 | taxes. Second, the Court rejects Kikkert's theory that he has stated a claim for injunctive relief
2 | over which the Court has jurisdiction. There are two problems with this theory. One, Kikkert has
3 | not identified a cause of action. Two, Kikkert relies on Larson v. Domestic & Foreign Commerce
4 | Corp., 337 U.S. 682 (1949), in which the Supreme Court held that suits against federal officers
5 | are not necessarily barred by sovereign immunity. But Kikkert's reliance on Larson is misplaced
6 | because his claims are asserted against the United States, not an officer. As such, even if he had
7 | identified a valid cause of action, it would be barred by sovereign immunity.

8 |     For these independent reasons, the Court finds that the claims against the United States
9 | must be dismissed for failure to state a claim.

10 | **D.     Leave to Amend**

11 |     "A court may deny leave to amend 'where the amendment would be futile . . . or where
12 | the amended complaint would be subject to dismissal.'" Puget Soundkeeper All. v. APM
13 | Terminals Tacoma LLC, 545 F. Supp. 3d 893, 896 (W.D. Wash. 2021) (quoting Saul v. United
14 | States, 928 F.2d 829, 843 (9th Cir. 1991)). Here, the United States has not asked for dismissal
15 | with prejudice. And although the Court doubts whether Kikkert can save his complaint through
16 | amendment, it finds that he should be granted leave. Kikkert must file his amended complaint
17 | within 30 days of entry of this Order.

18 | **E.     Surreply Improper**

19 |     The Court notes that it has not considered and STRIKES the Surreply that Kikkert filed.
20 | The Local Civil Rules permit surreplies only to request that materials filed in a reply be stricken
21 | and only after filing a notice of intent. LCR 7(g). As the Rule explains, "[e]xtraneous argument
22 | or a surreply filed for any other reason will not be considered." LCR 7(g)(2). Here, not only did
23 | Kikkert fail to file a notice of intent, but his Surreply also does not ask for any materials to be
24 |

stricken. Instead, the Surreply is used to provides additional argument in response to the Reply, which is not permitted. Consistent with the Local Civil Rules, the Court has not and will not consider the Surreply.

## CONCLUSION

The United States has adequately demonstrated that Kikkert both lacks standing and has failed to state a valid claim. The Court finds that it lacks jurisdiction over the claims against the United States and GRANTS the Motion to Dismiss. The Court GRANTS leave to amend, and Kikkert must file his amended complaint within 30 days of entry of this Order.

The clerk is ordered to provide copies of this order to Plaintiff and all counsel.

Dated August 11, 2025.

Marsha J. Pechman
United States Senior District Judge